IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RICKEY VON RAINES,

        Petitioner,

v.                                    **Case No.: 2:16-cv-04890**

DAVID BALLARD, Warden,
Mount Olive Correctional Complex

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Petitioner Rickey Von Raines's ("Raines") *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2), and Respondent's Motion for Summary Judgment, (ECF No. 11). This case is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). As a preliminary matter, the undersigned notes that the record before the Court is well-developed and provides a sufficient basis upon which to resolve this case without need for an evidentiary hearing. *See* Rule 8, Rules Governing Section 2254 Cases.

After thorough consideration of the record, the undersigned conclusively **FINDS** that (1) there are no material factual issues in dispute and (2) Petitioner is not entitled to the relief requested. Therefore, for the reasons that follow, the undersigned respectfully

**RECOMMENDS** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment; **DENY** Petitioner's Petition for a Writ of Habeas Corpus; and **DISMISS** this case from the docket of the Court.

## I.    Relevant Facts and Procedural History

### A. Pretrial Proceedings, Trial, and Direct Appeal

On January 13, 2009, Raines, along with Timothy Lambert and Jessica Raines, was indicted by a Logan County, West Virginia grand jury on four counts, including (1) Robbery in the First Degree, (2) Malicious Assault, (3) Nighttime Burglary, and (4) Conspiracy. (ECF No. 11-1). The indictment alleged that Raines and his co-defendants broke into the house of Goble and Victoria McFarland, struck and wounded Victoria McFarland with a firearm while in the house, and carried away various prescription medications and two rifles owned by the McFarlands. (*Id.*). These acts were alleged to have occurred during the nighttime hours between August 6, 2008 and August 7, 2008. (*Id.*) Raines filed a Pre-Trial Statement on March 31, 2009 saying that he "denies any involvement in any of the alleged crimes and places the State to the task of proving these allegations beyond a reasonable doubt." (ECF No. 11-2 at 2). In his Statement, Raines also indicated that he would rely upon the alibi testimony of his ex-girlfriend, Kassie Marcum, to show that he was with her, and not at the McFarland residence, at the time of the crime. (*Id.* at 3).

At a pretrial conference on May 5, 2009, the morning trial was scheduled to begin, Raines's trial counsel, Mark Hobbs ("Hobbs"), indicated to the trial court that the State had extended a plea offer the previous day. (ECF No. 11-3 at 30). The State "offered to reduce the charge of burglary to breaking and entering which would carry a one to ten year sentence, and then [Raines] would plead guilty to the conspiracy which carries a

possible sentence of one to five years, leaving to the Court's discretion whether those penalties would run concurrent or consecutive." (*Id.* at 30–31). This would leave Raines facing no less than two years and no more than fifteen years' imprisonment if he accepted the plea.

The court then addressed Hobbs and Raines directly. First, the court confirmed that Hobbs had conveyed the offer to Raines and recommended that he accept it. (*Id.* at 31). Second, the court received confirmation from Raines that Hobbs presented Raines with the State's offer the previous day, and Raines instructed Hobbs to decline the offer, understanding he would proceed to trial. (*Id.*).

During the pretrial conference, the prosecutor also informed the court that the State intended to forego any recidivist charges as part of the plea offer, but planned to file a recidivist petition if Raines was convicted of a violent offense at trial. (*Id.* at 31–35). The prosecutor explained that this could result in Raines being sentenced "to life in the penitentiary." (*Id.* at 32). Hobbs then responded with the following statement:

> I'll be the first to tell you, Judge, I discussed the possibility of recidivist with my client, but either I overlooked or didn't listen, but I was thinking all his felonies were non-violent, and I know burglary at least for purposes of parole is characterized as a violent crime. So I know that if there is a second violent crime conviction, that would present a possible factual basis for the recidivist to the life sentence rather than doubling the minimum.

(*Id.* at 34–35). The court then asked, "[y]ou now understand the offer was that if your client accepted the proposal, that the State would forego filing any recidivist action"? (*Id.* at 35). Hobbs responded by saying "[y]es." (*Id.*). After the court asked Raines whether he understood the terms to be as described by the court, he said "[y]es, Your Honor." (*Id.*).

Raines's trial lasted from May 5, 2009 to May 7, 2009. (ECF Nos. 11-3, 11-4, 11-5). Raines testified on May 7, 2009, the last day of trial, after being reminded of his right to

remain silent. (ECF No. 11-5 at 81–140). He testified that he and his live-in girlfriend, Kassie Marcum, were at their residence above Mt. Gay Lounge the entire night of the alleged burglary. (*Id.* at 95–96). Specifically, Raines said, "I did not leave Mt. Gay Lounge. I was at Mt. Gay Lounge the whole time." (*Id.* at 96). Later in his testimony, Raines reiterated, "I just swore on a Bible under oath I was at Mt. Gay Lounge the night of this robbery." (*Id.* at 100). During cross-examination, Raines stated "I didn't know nothing about the actual robbery or [Victoria McFarland] getting hurt." (*Id.* at 139).

After deliberating for less than two hours, the jury found Raines guilty of Robbery in the First Degree, Nighttime Burglary, and Conspiracy. (ECF No. 11-5 at 296–98). Raines was acquitted of the Malicious Assault charge. (*Id.* at 298). The State then filed a Recidivist Information regarding prior felony convictions. (ECF No. 11-7 at 3–4). On May 10, 2007, a hearing was held on this matter. (*Id.* at 3). Raines was represented by standby counsel, as Hobbs was unable to be reached and presumed unavailable. (*Id.*). During the proceeding, the State alleged that Raines was guilty of his third felony offense, qualifying him for a penalty of life in prison. (*Id.* at 4–7). Indeed, the State alleged that Raines was convicted of the following felonies: Aggravated Robbery, Nighttime Burglary, and Conspiracy on May 7, 2009; Attempted Burglary on August 14, 2007; and Forgery and Burglary on January 27, 2003. (*Id.* at 4–5). Raines remained silent when asked if he was the same person named in the Information, requiring a recidivist trial to be held to determine whether Raines was same person named in the Information. (*Id.* at 8).

On June 23, 2009, there was a hearing regarding the status of the recidivist trial. (ECF No. 11-8 at 1). Raines appeared in person, this time represented by Hobbs. (*Id.* at 2). During this proceeding, the State informed the court that it had extended a second plea offer to Raines, which Raines refused. (*Id.* at 2–3). Specifically, the State's second

plea offer required Raines to: (1) acknowledge in open court that he committed the offenses for which he was convicted; (2) plead guilty to perjury for his trial testimony and be sentenced to one to five years; (3) accept a sentence of one to five years for his conspiracy conviction; (4) accept a sentence of one to fifteen years for his burglary conviction; (5) accept a sentence of not less than thirty years for his aggravated robbery conviction; (6) acknowledge in open court that he was the same person who was convicted of burglary in 2003; (7) accept an additional sentence of five years for his 2003 burglary conviction; and (8) agree that the State would request that all sentences run consecutively. (*Id.* at 3–4).

Hobbs attempted to negotiate with the State by proposing a counter-offer that Raines would be sentenced to forty years, discharged in twenty years, and eligible for parole in ten years. (*Id.* at 6). Hobbs explained that the motivation behind this counter-offer was that Raines "had previously served time and knew that he would not be paroled, more than likely, the first time around. So he was more concerned with discharge dates than he was with parole eligibility dates." (*Id.*). The State rejected this counter-offer, withdrew its original offer, and asked for "a much larger sentence" from the court. (*Id.* at 6–7).

While discussing the applicable recidivist statute with the judge, Hobbs said, "I think the statute if [Raines] is convicted tomorrow is for a three time convicted felon, that the sentence is just life." (*Id.* at 7). In response, the prosecutor disagreed with Hobbs's analysis and argued, "[t]hat's just an additional sentence . . . in my opinion. We're going to ask for 80 years . . . ." (*Id.*). Hobbs then stated, "Judge, if that's correct law, I've told my client wrong and I want that to be right up front, because I told him that the only sentence tomorrow would be if he's convicted, that he would be sentenced to life and be

eligible after 15 years." (*Id.*). Hobbs then stated, "I did not take a position on this offer that was made this afternoon. I did not say yea or nay. If the Court is inclined to think that it can sentence to life and then also sentence on the underlying crimes, I do recommend this offer." (*Id.* at 9). Hobbs added, "if the Court is inclined to think that they can still sentence under the underlying offense, then this offer was basically rejected because of erroneous advice." (*Id.* at 11).

To prevent a possible habeas corpus action, the prosecutor put the new plea agreement back on the table. (*Id.* at 13). After Hobbs conferred with Raines and explained the court's interpretation of the law and the terms of the plea offer, Raines accepted the plea offer as long as he maintained his right to appeal. (*Id.* at 14–15). The prosecutor confirmed that he "would reserve to [Raines] any right that the law would allow him, either appeal or otherwise . . . ." (*Id.* at 15). The court then asked Raines whether he understood the terms of the new offer and whether he authorized Hobbs to accept the offer under those terms. (*Id.* at 16). Raines responded by saying that he understood the terms and accepted the agreement. (*Id.*).

On June 24, 2009, the circuit court held a plea hearing. (ECF No. 11-9 at 1). The prosecutor began the hearing by informing the court that the letter agreement signed the previous day included incorrect law as to the perjury count. (*Id.* at 4). Specifically, the prosecutor said, "I had stated that the penalty for perjury was one to five [years], because that's what we had discussed before, and when I checked the statute, it's one to ten [years]." (*Id.*). Hobbs then explained that he and his client agreed to this change, stating "since it did not really change the minimum on the one, he did not object to the fact that it did mention a different period." (*Id.* at 5). Raines then testified that he read over the entire agreement on his own, "[t]horoughly" went over the entire agreement with his

attorney, and that he "completely comprehend[ed] it." (*Id.* at 9). Raines also said that he was "more than satisfied" with the work that Hobbs had done for him as his attorney. (*Id.* at 10). Raines accepted the plea offer, and the court stated, "from everything known and presented to the Court, I believe and find that [Raines is] making a knowing, intelligent and voluntary choice to accept the State's offer." (*Id.* at 20).

Raines pled guilty to the perjury charge, the recidivist charge, and all the charges in the indictment. (*Id.* at 20–27). Raines admitted that he, Timmy Lambert, and Darrell Lambert participated in the burglary and robbery of the McFarlands. (ECF No. 11-9 at 21). He said they were targeting "a safe in the back bedroom that [Goble McFarland] always left open where he kept all his drugs and prescription medication." (*Id.* at 25). Raines further testified that he was the driver, and the co-conspirators watched the McFarland residence that night so they could enter when Mr. McFarland left, as Raines explained that Mr. McFarland "was a known drug dealer and smoked crack cocaine, and he was in and out of the residence all night for various parts of the time. We picked a part of the night that was the latest, where we figured that everybody in the surrounding community was asleep." (*Id.* at 23). They waited for Mr. McFarland to leave the house and then Timmy Lambert and Darrell Lambert entered the home. (*Id.* at 25). In case anyone was in the residence when they broke in, they brought zip-ties "to b[i]nd their hands." (*Id.* at 24–25). They also brought a "BB gun pistol," which "looked like a regular firearm." (*Id.* at 25). Raines ultimately admitted that he "did drive the boys up there to commit the robbery," that he was "part of it," and that he "was man enough to admit [he was] responsible for anything that did occur that night." (ECF No. 11-9 at 25-26).

The court imposed the following sentences to run consecutively: two to fifteen years for burglary; thirty years for robbery; and one to five years for conspiracy. (*Id.* at

35–36). The court also sentenced Raines to one to ten years for perjury, which was to run concurrently with the conspiracy charge. (*Id.* at 36). Under the combined sentences, Raines became eligible for parole after ten and half years in prison. (*Id.*).

On August 23, 2010, Raines filed a petition for appeal with the Supreme Court of Appeals of West Virginia ("WVSCA"). (ECF No. 11-18). In his petition, Raines claimed that the guilty plea he entered on June 24, 2009 was not voluntary, arguing that the trial court erred when it said that Raines could receive more than a life sentence under the recidivist statute. (*Id.* at 8–9). On February 16, 2011, the State filed a Summary Response in which it alleged that, while only one of Raines's three convictions could be enhanced under the recidivist statute, Raines could still be sentenced on the other two convictions in addition to the enhanced conviction. (ECF No. 11-19 at 3). The WVSCA issued a Memorandum Decision affirming Raines's conviction and sentence on April 18, 2011. (ECF 11-20 at 1–3). The WVSCA specifically held that the recidivist statute provides that the enhancement only applies to one of the charges and "[n]othing in the recidivist statute or our case law would excuse [Raines] from being sentenced for the separate crimes which he also committed." (*Id.* at 3).

### B. State Habeas Proceedings

In April 2012, Raines filed a petition for a writ of habeas corpus. (ECF No. 11-22). After the circuit court appointed Mark L. French ("French") as counsel, Raines filed an Amended Petition. (ECF No. 11-23). In the Amended Petition, Raines alleged ineffective assistance of trial counsel with respect to trial counsel's incomplete knowledge of recidivist sentencing and erroneous advice as a result thereof. (*Id.* at 7–11). Raines also alleged that there was a conflict between his conviction for Aggravated Robbery and his acquittal for Malicious Assault. (*Id.* at 10–11). In its Response, the State argued that trial

counsel was not ineffective and that the jury had enough evidence to convict Raines of Robbery in the First Degree. (ECF No. 11-24 at 7–9).

On October 23, 2013, the circuit court held a habeas corpus hearing. (ECF No. 11-25). The first witness called at the state habeas hearing was Raines. (*Id.* at 6). He testified that Hobbs, his trial counsel, instructed him that the recidivist statute would not apply because "two out of three of my past convictions had to be violent for the State to ever file a recidivist statute. [Hobbs] said that that was not the case in my case. That my case was non-violent." (*Id.* at 9). He also testified that he refused to accept the two to fifteen year plea offer "because the State was trying to say that I had involvement, that Vickie McFarland had gotten hurt in the process of the robbery. They was trying to pin it all basically on me to say that I broke into that residence and I never entered the McFarland residence." (*Id.* at 24). Raines also testified that he would have "most certainly" taken the two to fifteen year plea offer if he knew then what he knows now. (*Id.* at 45).

French also called Hobbs as a witness. (*Id.* at 48). Hobbs testified that he "highly recommended" that Raines take the plea offer before trial. (*Id.* at 51). Hobbs also explained that, while he was discussing the plea offer with Raines, a court reporter was in the room and said that Raines "was not using his head for not taking this plea because too many bad things can happen with the nature of the offenses." (*Id.* at 65). Despite receiving advice from his attorney and the court reporter, Raines did not want to accept the plea. (*Id.*). Hobbs said he "just would not do it." (*Id.*). Hobbs also testified that he could not recall Raines ever asking whether the court could sentence him to additional time beyond life in prison. (*Id.* at 65–66).

On July 14, 2014, the circuit court issued an order denying habeas relief. (ECF No. 11-30 at 1). The circuit court addressed three grounds for relief raised by Raines: (1)

ineffective assistance of counsel based on Raines receiving allegedly erroneous advice on his potential habitual offender status; (2) ineffective assistance of counsel based on trial counsel allegedly failing to advise Raines of the consequences of testifying at his own trial; and (3) Raines' contention that he could not be found guilty of Robbery in the First Degree since he was acquitted of Malicious Assault. (*Id.* at 7–11). The circuit court found, however, that none of these claims warranted relief. (*Id.*).

In August 2014, Raines appealed the circuit court's decision to the WVSCA. (ECF No. 11-31 at 1–7). In his notice of appeal, Raines raised two assignments of error: (1) ineffective assistance of counsel for improper advice concerning his plea and (2) improper assistance of counsel for not preparing Raines to testify at trial. (*Id.* at 7). Raines later filed a *pro se* Reply in response to Respondent's Brief, in which Raines raised new assignments of error. (ECF No. 11-34). Respondent then moved to strike the Reply because, among other things, Raines was represented by counsel. (ECF No. 11-35 at 3–5). The WVSCA entered an order explaining that it would treat the *pro se* reply brief as a supplemental brief and gave Respondent time to file a response. (ECF No. 11-36 at 2).

In what the WVSCA determined to be Raines's Supplemental Brief, Raines raised three assignments of error: (1) ineffective assistance of counsel regarding advice as to the pre-trial plea; (2) ineffective assistance of counsel regarding advice as to the post-trial plea; and (3) involuntary plea. (ECF No. 11-34 at 2–6). Respondent addressed each argument in his Response to the Supplemental Brief. (ECF No. 11-37 at 5–11).

On February 12, 2016, the WVSCA issued an Opinion denying habeas relief. (ECF No. 11-38 at 25). The WVSCA summarily dispensed of the additional arguments raised by Raines in his supplemental brief, specifically stating that it found "no support in the record to substantiate" the involuntary plea claim. (*Id.* at 5). Regarding the ineffective

assistance of counsel claim, the WVSCA found that "[t]he re-extending of the Post-conviction Offer cured any prejudice that could have been caused by the erroneous advice given." (*Id.* at 24). The WVSCA ultimately held that "the circuit court's decision to deny the petition for habeas corpus relief is affirmed." (*Id.* at 25).

### C. Federal Habeas Petition

On May 31, 2016, Raines filed the instant section 2254 petition seeking a writ of habeas corpus. (ECF No. 2). On June 30, 2016, the undersigned ordered Respondent to answer the petition. (ECF No. 8). On September 29, 2016, Respondent filed an answer, (ECF No. 13), and a motion for summary judgment, (ECF No. 11). In his answer, Respondent asserted that Raines's petition was timely and that the state court remedies for the claims raised in the petition had been exhausted. (ECF No. 13 at 1–7). On October 13, 2016, Raines filed a memorandum in opposition to Respondent's motion for summary judgment, (ECF No. 15), and just over one week later, on October 21, 2016, Respondent filed a reply brief, (ECF No. 16). Therefore, the issues have been fully briefed and are ready for resolution.

## II. <u>Raines's Claims</u>

Raines asserts the following grounds in support of his section 2254 habeas petition:

1. Petitioner was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when trial counsel failed to give correct legal advice regarding his pleas. (ECF No. 2 at 5).

    A. Trial counsel was ineffective when he failed to point out that Raines would be subject to an additional sentence under the recidivist statute if he did not accept the first plea offered by the State, which was offered before trial;

B. Trial counsel was ineffective when he failed to correctly calculate the maximum sentence Raines could be subject to under the recidivist statute if he did not accept the second plea offered by the State, which was offered after Raines was convicted but before the recidivist trial.

2. Petitioner was denied due process under the Fourteenth Amendment of the United States Constitution when trial counsel, the judge, and the prosecutor attempted to force him to accept a plea involuntarily. (*Id.* at 7).

## III.  <u>Standard of Review</u>

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a section 2254 petition, the district court applies the standard set forth in section 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (1) and (2). Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e) (1). Thus, when reviewing a petition for habeas relief, the federal court uses a "highly deferential lens." *DeCastro v. Branker,* 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of section 2254(d)(1) have separate and independent meanings. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams,* 529 U.S. at 405) (internal quotations omitted). A habeas writ may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300–01 (internal marks omitted).

Accordingly, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be unreasonable." *Williams*, 529 U.S. at 365.

Here, Respondent has moved for summary judgment. (ECF No. 11). Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller &, Mary Kay Kane, *Federal Practice and Procedure*: *Civil* § 2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition, only genuine disputes over material facts "will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

Motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990). Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light

most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249–50). With these standards in mind, the undersigned considers each ground raised by Raines.

## IV.  Discussion

### A. Ineffective Assistance of Counsel

Raines alleges that his trial counsel was ineffective for two reasons. (ECF No. 2 at 5). Each sub-ground for relief is addressed individually below. Preliminarily, the undersigned will discuss the standard governing ineffective assistance of counsel claims under the AEDPA.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686 (1984). While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate ... defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694. When reviewing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Moreover, counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as

seen from counsel's perspective at the time," and a court should not allow hindsight to alter its review. *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). In addition, trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995).

In a section 2254 proceeding, the standard of review differs somewhat from the standard used in the direct review of a *Strickland*-based challenge. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem review is doubly so." *Id.* at 788 (internal citations and quotations omitted). "'Surmounting *Strickland's* high bar is never an easy task[;]' ... Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)). The question, then, is not "whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788. With this standard in mind, the undersigned turns to Raines's specific claims of ineffective assistance of counsel.

### 1. Pre-trial Plea Offer

In his first claim of ineffective assistance of counsel, Raines argues that his counsel was ineffective by offering incorrect legal advice concerning his potential habitual offender status when Raines considered accepting a plea offer before trial. (ECF No. 2 at 5). In discussing this claim, the state circuit court expressly rejected Raines's testimony offered at the omnibus evidentiary hearing that Hobbs provided incorrect advice prior to trial, instead concluding from the evidence that the only advice given by Hobbs to Raines before trial was "that he could possibly face a life sentence." (ECF No. 11-30 at 5). The court also rejected the credibility of Raines's statement that he would have accepted the

pre-trial plea offer if he had known that he faced prison time in addition to a life sentence. The court noted Hobbs's testimony that Raines rejected the pre-trial plea agreement because of his claimed level of involvement in the crime, not because of any potential punishment. The court explicitly found Hobbs's testimony to be more credible than that of Raines. (*Id.* at 6). The court stated, "[i]t is clear from Petitioner's own testimony, and that of trial counsel, that Petitioner, contrary to advice of counsel, proceeded to trial because he believed that the State could not meet its burden of proof that he was guilty of the crimes charged, rather than any threat of punishment." (ECF No. 11-30 at 7). The court continued, "Petitioner's motivation to go to trial was not based on any possible sentence, but rather on his belief that he would not be found guilty." (*Id.* at 8). The circuit court held "that any error on trial counsel's part regarding the potential sentence was not so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment" and denied the claim. (*Id.* at 8–9). The WVSCA, when reviewing the habeas petition, stated, "the Petitioner cannot meet the first prong of *Miller/Strickland* as he failed to show that his trial counsel's performance was deficient under an objective standard of reasonableness regarding the Pre-trial Offer." (ECF No. 11-38 at 23–24).

When applying the AEDPA's highly deferential standard, Petitioner's claim must fail. "As the Supreme Court has explained, although '[t]he term 'unreasonable' is no doubt difficult to define ... [i]t suffices to say ... that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. ... Rather, 'even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's ... determination." *Merzbacher v. Shearin*, 706 F.3d 356, 364 (4th Cir. 2013) (quoting *Wood v. Allen,* 558 U.S. 290, 301 (2010) (internal citation and

quotation marks omitted)). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part. This is especially so when the court resolved issues like witness credibility, which are "factual determinations" for purposes of Section 2254(e)(1)." *Sharpe v. Bell*, 593 F.3d 372, 378–79 (4th Cir. 2010) (citing *Wilson v. Ozmint,* 352 F.3d 847, 858 (4th Cir. 2003)). "[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Id.* (quoting *Cagle v. Branker,* 520 F.3d 320, 324-25 (4th Cir.2008)).

Raines has not established that trial counsel's performance fell below what the Sixth Amendment guarantees. Raines asserts that he relied on trial counsel's advice when counsel told him that the recidivist statute would not apply because Raines did not have any prior violent felony convictions. (ECF No. 15 at 1). However, Raines has not provided any evidence of this purported advice. Instead, the evidence indicates otherwise. Hobbs testified that he could not recall Raines ever asking whether the court could sentence him to additional time beyond life in prison. (ECF No. 11-25 at 65–66). The evidence also shows that trial counsel strongly encouraged Raines to accept the plea, and Raines rejected it thinking a jury would acquit him of the crimes after hearing alibi testimony. (ECF No. 11-30 at 7). This is supported by the statement Raines made before trial, where he denied "any involvement in any of the alleged crimes" and explained that he would rely upon the alibi testimony of his ex-girlfriend, Kassie Marcum, to show that he was with her, and not at the McFarland residence, at the time of the crime. (ECF No. 11-2 at 2–3). Raines also testified that he refused to accept the two to fifteen year plea offer "because the State was trying to say that I had involvement, that Vickie McFarland had gotten hurt in the process of the robbery. They was trying to pin it all basically on me to say that I

broke into that residence and I never entered the McFarland residence." (ECF No. 11-25 at 24). Ultimately, Raines was not credible and did not support his allegations with facts. Given the evidence presented at the omnibus hearing, the factual determinations made by the state courts were not unreasonable, and the decision of the courts to reject this claim was not contrary to clearly established federal law. Consequently, Raines's request for federal habeas relief on this ground fails.

### 2. Post-trial Plea Offer

Raines next contends that his counsel was ineffective for giving him incorrect legal advice concerning the maximum sentence available when considering his habitual offender status. (ECF No. 2 at 5). Specifically, Raines claims trial counsel "gave erroneous advice on a 65 [year] plea after trial" but before the recidivist trial, and trial counsel told him "the court couldn't sentence [him] to consecutive charges" in addition to the habitual offender enhancement. (ECF No. 15 at 1). The circuit court agreed that "trial counsel had a mistaken belief that the Trial Court could not sentence Petitioner for multiple convictions to any additional time in addition to a life sentence if he was found guilty of being a habitual criminal." (ECF No. 11-30 at 8). The circuit court, however, rejected Raines's ineffective assistance of counsel claim on the basis that he failed to establish the prejudice prong of *Strickland.* (*Id.* at 8–9). The court found that even if counsel were ineffective, there was not a reasonable probability that the result of the proceeding would have been different but for counsel's errors. (*Id.*)

The undersigned agrees with the state courts that Raines cannot establish prejudice. "In cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland* … demands that a habeas petitioner show that there is a reasonable probability that, but for counselor's errors, he

would not have pleaded guilty and would have insisted on going to trial." *State ex rel. Vernatter v. Warden, West Virginia Penitentiary*, 528 S.E.2d 207, 210 (W. Va. 1999). First, the evidence indicates that Raines was so opposed to going to trial to face a possible life sentence plus eighty years that he felt as though he was "forced" to accept the plea. (ECF No. 15 at 1). This language indicates that Raines had no intention of refusing the plea and would accept the plea today if put in the same situation. Second, the circuit court determined that the erroneous advice initially given to Raines by counsel was corrected during the recidivist hearing when the court clarified the law and the prosecutor re-offered the plea. (ECF No. 11-30 at 7–8). Thus, after receiving accurate information, Raines considered his options and accepted the plea offer. As a result, the outcome would not have been different absent trial counsel's error. Consequently, the state courts' determination that Raines failed to demonstrate both prongs of the *Strickland* test was neither unreasonable, nor contrary to clearly established federal law.

### 3. Ineffective Assistance of Counsel Conclusion

Having thoroughly considered the matter, the undersigned **PROPOSES** that the presiding District Judge **FIND** that Raines has failed to show that the state court's denial of his claim of ineffective assistance of counsel was an objectively unreasonable application of, or contrary to, clearly established federal law. Additionally, the undersigned **PROPOSES** that the presiding District Judge **FIND** that Raines has failed to establish the state court's denial of his claim of ineffective assistance of counsel was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. Accordingly, the undersigned **RECOMMENDS** that Respondent be granted summary judgment on ground one of the petition.

### B. Involuntary Plea

Raines next alleges that his guilty plea was the result of coercion based on the State's threat of life plus eighty years if he did not accept the plea. (ECF No. 15 at 1–2). Specifically, Raines contends he "was forced into accepting the 65 [year] plea because the prosecutor and Judge threatened [him] with life on the habitual, 80 [years] for robbery, a 1 to 10 for perjury, [] a 1 to 5 for conspiracy and a 1 to 15 for burglary if [he] didn't accept their plea offer." (*Id.*). Because he "felt threatened by this gesture the court used," he claims to have been "stripped" of his right to deny the plea. (*Id.*). Additionally, Raines claims that his trial counsel "ordered [him] to accept" the plea. (ECF No. 2 at 7). Raines contends that being forced to accept the plea involuntarily violated the Due Process Clause, and that he is, therefore, entitled to habeas relief.

The state circuit court's opinion did not address this claim on the merits, as this claim was not raised until Raines appealed his habeas petition to the WVSCA. While before that court, Raines filed a *pro se* Reply to Respondent's Brief, claiming that appointed counsel refused to raise certain claims alleged by Raines. (ECF No. 11-34 at 2). In his Reply, later interpreted by the WVSCA as a Supplemental Brief, Raines alleged the claim of Involuntary Plea for the first time. (*Id.* at 4-6). In its Opinion, the WVSCA summarily dispensed of this claim and found "no support in the record to substantiate this assertion." (ECF No. 11-38 at 5, n. 1). Regardless, even applying *de novo* review rather than AEDPA deference, the claim fails.

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citing *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977)). A plea is considered valid when it is a "voluntary and intelligent choice

among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Especially when a plea bargain is "favorable" to petitioner, such that "accepting it was a reasonable and prudent decision," those facts indicate the "voluntary and intelligent character" of the plea. *Fields*, 956 F.2d at 1299. In *Fields*, for example, the court found the plea to be favorable because the defendant was only sentenced to five years under the plea, whereas he would have been sentenced to twenty years if he had been convicted at trial. *Id.*

Under these standards, Raines has failed to establish that his plea was involuntary. First, during his plea hearing, Raines represented that he "[t]horoughly" read over his plea offer, discussed it with counsel, and "completely comprehend[ed]" the terms of the deal. (ECF No. 11-9 at 9). Raines also stated "I understand" when asked if he understood that he was entitled to have a separate trial on the recidivist issue and that he was giving up that right by accepting the plea. (*Id.* at 13). This indicates that Raines was informed adequately and prepared to make an intelligent choice about the State's plea offer. Second, Raines stated that he was "more than satisfied" with Hobbs's performance as Raines's attorney and "completely" pleased with what Hobbs accomplished in comparison to other attorneys Raines had worked with in the past. (*Id.* at 10). Importantly, Raines was asked by the court, "do you feel like anybody is forcing you into this deal here today?", to which he responded "no." (*Id.* at 14–15). The court also noted, "from everything known and presented to the Court, I believe and find that [Raines is] making a knowing, intelligent and voluntary choice to accept the State's offer." (*Id.* at 20). These statements indicate that Raines was not pressured into accepting the plea by his attorney and instead was happy with his attorney and complying with his legal advice when accepting the plea. Lastly, having accepted a plea deal resulting in a sentence of 65

years instead of facing a recidivist trial that could have resulted in sentence of life plus 80 years, Raines accepted a plea that was more favorable, which creates a presumption that the plea was entered into voluntarily.

Finally, Raines claims that the prosecutor and judge forced him into accepting the plea when they explained that he would be subject to a sentence up to life plus 80 years if he proceeded to the recidivist trial. It is important to remember, however, that "[p]lea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (quoting *Brady v. U.S.*, 397 U.S. 742, 752 (1970)). Accepting the legitimacy of plea bargaining requires the "rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process." *Id.* "While confronting a defendant with the risk of a more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Id.* at 364 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). Thus, "the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty" is constitutionally legitimate. *Id.* By informing Raines that he faced the greater sentence of life plus eighty years by not accepting the plea, the prosecutor was merely informing Raines that he was seeking maximum penalties following a recidivist trial conviction. While this information may have been designed to persuade Raines into accepting the plea of 65 years, it was a clear and correct statement of a very possible legal outcome. Thus, Raines' involuntary plea claim fails.

Having thoroughly considered the matter, the undersigned **PROPOSES** that the

presiding District Judge **FIND** that Raines has failed to establish that the WVSCA's denial of his involuntary plea claim was an objectively unreasonable application of, or was contrary to, clearly established federal law. Accordingly, the undersigned **RECOMMENDS** that Respondent be granted summary judgment on ground two of the petition.

## V.   <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1.  Respondent's Motion for Summary Judgment, (ECF No. 11), be **GRANTED**;

2.  Petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody, (ECF No. 2), be **DENIED**; and

3.  That this action be **DISMISSED, with prejudice**, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and any counsel of record.

**FILED:** May 3, 2017

Cheryl A. Eifert
United States Magistrate Judge